**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JENNIFER SILVA,

      Plaintiff,                          Case No.: 8:17-cv-01708-VMC-JSS

v.

SPEEDWAY LLC,

      Defendant.
_____/

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**
**AND DISMISSAL WITH PREJUDICE**

Plaintiff Jennifer Silva ("Plaintiff" or "Silva") and Defendant Speedway LLC ("Speedway"; Plaintiff and Speedway are together referred to as the "Parties"), through their undersigned counsel, jointly move that the Court: 1) approve the terms of the settlement they have agreed to following negotiations; 2) dismiss this case with prejudice; and 3) retain jurisdiction to enforce the terms of the Parties' settlement. In support of this motion, the Parties state as follows.

**FACTUAL BACKGROUND**

Speedway operates convenience stores that offer customers everything from coffee to deli sandwiches to the opportunity to fill their cars with gasoline. Plaintiff Jennifer Silva worked as a cashier for Speedway in a Clearwater location for 12 weeks, from March 14, 2017 through June 6, 2017. She earned $9.30 per hour.

On July 17, 2017, Plaintiff filed a complaint against Speedway alleging violations of the Fair Labor Standards Act ("FLSA"). ECF No. 1. At its core, Plaintiff's

allegations focused on her claim to have worked time "off the clock" for which she was not compensated. On September 26, 2017, Speedway answered Silva's complaint. ECF No. 16. Speedway denied all allegations of wrongdoing and asserted multiple defenses, including that Silva's claims are barred as to all hours allegedly worked of which Speedway lacked constructive or actual knowledge and that she may not recover straight time under the FLSA.

On August 8, 2017, the Court filed its FLSA Scheduling Order ("Order") requiring counsel to serve upon each other certain documents relating to Plaintiff's wage and hour claims. ECF No. 10. The Court also required Plaintiff to respond to Court ordered Interrogatories and for Defendant thereafter to file a verified summary of all hours worked by Plaintiff. Plaintiff filed the required Interrogatories and Defendant filed its verified summary. ECF Nos. 11 and 12. In her Interrogatories, Plaintiff claimed to have worked "between three and five hours a week for which she was not paid." ECF No. 11 at 5. Subsequently, the Parties also exchanged the required documents.

Beginning in late August 2017, by which point Plaintiff had filed her Interrogatories and Speedway had filed its verified summary, the Parties, through their counsel, began to discuss early resolution of this matter. Decisive to this case, for security purposes, Speedway video records activity on its premises, 24 hours a day, 7 days a week. As a result, Speedway has video footage showing Silva's arrival and departures to the location throughout her employment. Therefore, unlike your typical "off the clock" case, Speedway has objective information showing the maximum Silva

even could claim – i.e., from the times she arrived through the times she left Speedway's premises.

When the Parties began to discuss settlement in August, Speedway discussed this footage with Plaintiff's counsel. Further, in order to facilitate settlement discussions, Speedway produced relevant footage to counsel in early October. Based upon the information captured in this video, and the facts that Plaintiff claimed only to have worked "between three and five hours a week for which she was not paid" and she undisputedly recorded less than 35 hours per week during 7 of the 12 weeks that she worked for Speedway (meaning that even if true, under her own claims she would be entitled to overtime during only 5 weeks), Plaintiff's claims were undisputedly modest.[1] Plaintiff's counsel conceded this point. Notwithstanding this agreement upon Plaintiff's potential entitlement, because counsel for the Parties were not able to reach agreement upon the amount of attorneys' fees and costs that Plaintiff's attorneys were entitled to, the Parties were unable to resolve the matter in advance of mediation.

On October 13, 2017, the Parties mediated this matter with Mark Hanley. During the mediation the Parties discussed the video footage and the maximum amount that Silva could recover even if successful at trial. The Parties also discussed the amount of attorneys' fees and costs that Plaintiff's counsel reasonably could claim in this matter.

---

[1] This footage shows that using the times that Silva entered and exited the store and/or got into her car, and assuming all of the time in between is compensable – an assumption that would not be supported by the law or facts had the Parties tried this matter – and comparing that time to the time for which Silva was paid, Silva would be entitled to approximately (rounding up) 4.68 hours in overtime. Importantly, on the rare occasion where Silva may have done something arguably compensable when leaving the store for the day (for example, thrown out garbage), for the purposes of its analysis Speedway used the time Silva got into her car. This footage allowed the Parties to discuss the outer boundaries of what Silva could recover under her best case scenario. At an undisputed overtime rate of $13.95, Silva would be entitled to $65.29 in overtime.

Ultimately, after several exchanges, the Parties reached agreement on a total settlement amount of $4,650.00.  As reflected in the Settlement Agreement and General Release ("Agreement") attached hereto at Exhibit A, Silva will receive $600.00: $200.00 for unpaid wages; $200.00 for liquidated damages, and $200.00 as consideration for the general release and other consideration provided in the Agreement.  As discussed herein, based upon the video footage and unchallenged records showing that Silva recorded less than 35 hours for 7 of her 12 weeks with Speedway, $600 was far more than she stood to recover if the matter had gone to trial.[2]  Following negotiation, the Parties also agreed that Plaintiff's counsel would be paid $4,050.00 for their fees and costs in this matter.[3]

As demonstrated herein, the terms of the Agreement were reached following negotiation by experienced counsel and Silva agrees that as a result of this settlement, she will be compensated for all hours worked.  The settlement terms reflect the

---

[2] In her responses to the Court ordered Interrogatories, Silva claimed entitlement to a total of $651 in "raw" damages, which she claimed should be liquidated. ECF No. 11 at 5.  In that calculation, Silva appeared to assume that she was entitled to recovery of straight time hours under the FLSA.  The FLSA provides for recovery of minimum wages and overtime only.  *See, e.g., Jackson et al v. First Student Management LLC et al.,* No.: 3:16-cv-00557-HES-MCR (M.D. Fla. Apr. 20, 2017), at 5-8 (dismissing plaintiffs' claims for overtime gap time hours because the FLSA does not afford recovery for gap time damages); *Urzola v. Thumbelina Learning Ctr. Corp.,* 2012 U.S. Dist. LEXIS 121867, at *2 & n.1 (S.D. Fla. Aug. 27, 2012) (where plaintiff alleged that defendant "denied her proper overtime and 'straight time' compensation for workweeks longer than forty hours in violation of [the FLSA]," court agreed with defendant that "the FLSA does not provide a statutory remedy for 'straight time' hours that exceed the minimum wage.  Rather, the FLSA only permits damages for violations of the minimum wage and overtime provisions in § 206 and § 207 respectively"); *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 116 (2d Cir. 2013) (the "FLSA does not provide for a gap-time claim even when an employee has worked overtime"; "the text of FLSA requires only payment of minimum wages and overtime wages. . . . It simply does not consider or afford a recovery for gap-time hours . . . *So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week.*") (emphasis added).  Silva does not claim that she was paid less than minimum wage.

[3] Speedway also agreed to cover the full cost of the mediation.

recognition of the risk and costs of litigation by Parties with counsel experienced in such matters. In order to avoid these risks and costs, the Parties agree that resolving this litigation in accordance with the Agreement makes sense for all concerned. The Parties therefore urge this Court to approve their settlement.

## MEMORANDUM OF LAW

In the Eleventh Circuit, a compromise of an FLSA claim must either be supervised by the Secretary of Labor or approved by the district court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). In order to approve the settlement, a court must determine that the compromise is a fair and reasonable resolution of a bona fide dispute under the FLSA. *Id.* at 1354. If the settlement is fair and reasonable, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* The terms of the Parties' settlement plainly comply with the spirit of *Lynn's Food Stores, Inc*.

In deciding whether an FLSA is fair and reasonable under *Lynn's Foods*, Florida district courts consider the following nonexclusive factors: (i) the existence of fraud or collusion behind the settlement; (ii) the complexity, expense and expected duration of the litigation; (iii) the stage of the proceedings and amount of discovery completed; (iv) the probability of plaintiff's success; (v) the range of possible recovery; and (vi) the opinions of counsel. *See, e.g.*, *Roman v. FSC Clearwater, LLC*, No: 6:16-cv-969, 2017 U.S. Dist. LEXIS 66536, at *3 (M.D. Fla. Apr. 21, 2017), *report and recommendation adopted by*, No: 6:16-cv-969, 2017 U.S. Dist. LEXIS 65957 (M.D. Fla. May 1, 2017). When an FLSA settlement "reflects a reasonable compromise of [ ] FLSA claims that are actually

5

in dispute," the court may approve the settlement. *Id.* In reviewing FLSA settlements, courts recognize that "[t]here is a strong presumption in favor of settlement." *Id.*

Further, generally, in the Middle District:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes a full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

*McGlone v. Full Spectrum Telecomms.*, Inc., No. 8:12-cv-2570, 2013 U.S. Dist. LEXIS 70372, at *3-4 & n.1 (May 17, 2013) (Covington, J.) (quoting *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (internal quotation marks omitted).

Here, Silva negotiated settlement terms through counsel and with the assistance of an experienced mediator that are satisfactory to the Parties. The undersigned counsel, who are experienced in wage and hour matters, view the terms agreed upon as a good outcome for the Parties. If this matter had gone to trial, a jury ultimately could determine that Silva is entitled to no recovery whatsoever, or perhaps only a fraction of the amount she is recovering through this settlement. There has been no fraud or collusion in the settlement of this matter. The Parties assessed their respective positions and consulted with their counsel before reaching agreement upon the terms of the settlement.

Moreover, the amount of attorneys' fees and costs that Speedway will pay on behalf of Silva was negotiated separately and without regard to the amount to be paid to Plaintiff. Ultimately, the Parties decided that it is in their respective best interests to resolve this matter early through settlement rather than to proceed through protracted and costly litigation.

As demonstrated above, the settlement reached in this matter is "fair and reasonable." *Anderson v. Pittion-Rossillon*, No: 8:11-cv-2185, 2012 U.S. Dist. LEXIS 46714, at *3-5 (M.D. Fla. Apr. 3, 2012) (Covington, J.) (approving "Settlement Agreement and Full and Final General Release"); *see also McGlone*, 2013 U.S. Dist. LEXIS 70372, at *3-4 (approving FLSA settlement agreement with general release). The Parties respectfully submit that their settlement should be approved.

## CONCLUSION

In light of the contested issues presented in this case and the potentially protracted and uncertain litigation that lies ahead, the settlement terms represent a fair and equitable resolution of this matter. The Parties therefore respectfully request that the Court enter an order: (1) approving the terms of the settlement of Plaintiffs' claims; (2) dismissing this action with prejudice; (3) retaining jurisdiction to enforce the terms of the settlement; and (4) granting such further relief as the Court deems just.

DATED this 20th day of October, 2017.

Respectfully submitted,

| | |
|---|---|
| **/s/ Kyle J. Lee** <br> Kyle J. Lee <br> Florida Bar No.: 105321 <br> Email: Kyle@kyleleelaw.com <br> LEE LAW, PLLC <br> 1971 West Lumsden Road, Suite 303 <br> Brandon, FL  33511 <br> Telephone: (813) 343-2813 <br><br> **/s/ W. John Gadd** <br> W. John Gadd <br> Florida Bar No.:  463061 <br> Email: wjg@mazgadd.com <br> Bank of America Building <br> 2727 Ulmerton Rd., Suite 250 <br> Clearwater, FL  33762 <br> Telephone: (727) 524-6300 <br> ***Attorneys for Plaintiff*** | **/s/ Theresa M. Waugh** <br> Jeffrey B. Jones <br> Florida Bar No.: 000039950 <br> Email:  jbjones@littler.com <br><br> Theresa M. Waugh <br> Florida Bar No.: 89593 <br> Email: twaugh@littler.com <br><br> LITTLER MENDELSON, P.C. <br> 111 North Magnolia Avenue <br> Suite 1250 <br> Orlando, FL  32801-2366 <br> Telephone: (407) 393-2900 <br> Facsimile:  (407) 393-2929 <br><br> ***Attorneys for Defendant*** |